**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

Civil Action Number:

WALTER JOSEPH BECKMAN,
ANDRES GOMEZ, On Their Own Behalf,
and On Behalf of All Other Individuals
Similarly Situated,

      Plaintiffs,

vs.

AMERICAN MULTI-CINEMA, INC.
 d/b/a/ AMC THEATERS

      Defendant.

---

### COMPLAINT – CLASS ACTION

---

Plaintiff Walter Joseph Beckman and Plaintiff Andres Gomez, on their own behalf, and on behalf of all Other Individuals Similarly Situated, hereby and sue Defendant American Multi-Cinema, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12181-12189 ("ADA"), 28 C.F.R. Part 36 and allege as follows:

### <u>INTRODUCTION</u>

1.      This is an action to put an end to civil rights violations committed by Defendant American Multi-Cinema, Inc. (also referenced herein as "Defendant") against individuals with disabilities who are visually impaired and who cannot access and comprehend the internet and the websites that operate therein.

1

2.      Defendant American Multi-Cinema, Inc. maintains an internet website www.amctheatres.com ("website").

3.      Defendant American Multi-Cinema, Inc.'s website is available to the general public. As such it has subjected itself to the Americans with Disabilities Act ("ADA"). [1]

4.      The Defendant's website is offered to provide the general public information including but not limited to: information on the various locations of Defendant American Multi-Cinema, Inc.'s chain movie theaters ("AMC Movie Theaters") throughout the United States.   The Defendant's AMC Movie Theaters are places of public accommodation.

5.      Among other things, the Defendant's website also provides synopsis and reviews of movies currently offered and upcoming movies, movie show times, ticket prices, special promotions, and provides the general public ability to purchase movie tickets as well as to purchase gift cards.   The website also offers the general public enrollment opportunity for AMC Movie Theaters frequent movie watcher program (called "AMC Stubs"), and to manage their AMC Stubs frequent watcher account(s) and to receive benefits thereon.

6.      Since each of the Defendant's AMC Movie Theaters  are places of public accommodation, the Defendant's website must comply with the ADA, which means it

---

[1] "*The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities.*" ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the general public.

7.     For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society. The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.

8.     The Defendant's website does not provide screen reader software or other means to accommodate the visually impaired, nor does it interface with screen reader software in order that visually impaired individuals can comprehend the website.

## JURISDICTION & VENUE

9.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. §1331, and 28 C.F.R. §36.201.

10.     This is also an action for declaratory and injunctive relief to prevent discrimination which includes equal access to internet.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because lead Plaintiff Water Joseph Beckman resides in this District, and the Defendant transacts business in this District, and the acts constituting the violation of the ADA occurred within this District.

12.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## PARTIES

**Walter Joseph Beckman**

13.     Plaintiff Walter Joseph Beckman ("Plaintiff Beckman") is a resident of the state of Florida and resides within the USDC Middle Judicial District of Florida, is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14.     Plaintiff Beckman suffers from what constitutes a "qualified disability" under the ADA.  Plaintiff Beckman is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately visualizing his world and adequately traversing obstacles and walking without assistance. Plaintiff Beckman's disability is defined in 42 U.S.C. §12012(1)(A) and in 42 U.S.C. 3602, §802(h).

15.     Plaintiff Beckman frequently utilizes the internet and due to his visual disability, must use commercially available screen reader software to interface with and to comprehend various websites, such as the Defendant's website (¶¶s 2-5).

16.     Plaintiff Beckman has attempted to use the Defendant's website to become informed of the movies offered, the show times, and to purchase tickets to the various movies, and therefore gain access to the Defendant's places of public accommodation.

**Andres Gomez**

17.     Plaintiff Andres Gomez ("Plaintiff Gomez") is a resident of the state of Florida and resides within the USDC Southern Judicial District of Florida, and is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

18.     Plaintiff Gomez suffers from what constitutes a "qualified disability" under the ADA.  Plaintiff Gomez is legally blind, and therefore is substantially limited in performing one or more major life activities, including but not limited to accurately

visualizing his world, adequately traversing obstacles and walking without assistance. The Plaintiff's disability is defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h).

19.     Plaintiff Gomez frequently utilizes the internet and must use commercially available screen reader software to interface with and to comprehend various websites, such as the Defendant's website (¶¶s 2-5).

20.     Plaintiff Gomez has attempted to use the Defendant's website to become informed of the movies offered, the show times, and to purchase tickets to the various movies, and therefore gain access to the Defendant's places of public accommodation.

**Other Plaintiffs Similarly Situated**

21.     Other plaintiffs similarly situated to Plaintiff are qualified individuals with disabilities under, and as defined by, the ADA.

22.     Other plaintiffs are also similarly situated to Plaintiff by virtue of the fact that they are disabled with visual impairments and require screen reader software (which is commercially available) in order to comprehend the Defendant's website to become informed of Defendant's locations and weekly advertised specials and therefore gain access to the Defendant's places of public accommodation for the purposes of visiting the physical locations to purchase grocery items,  which other members of the general public may have access to online.

**American Multi-Cinema, Inc.**

23.     Defendant American Multi-Cinema, Inc. (also referenced as "Defendant") operates a chain of movie theaters in the State of Florida under the "AMC Theater(s)" brand. The Defendant is a subsidiary of AMC Entertainment, Inc., which operates (itself

or through other subsidiaries) a chain movie theaters throughout the United States ("AMC Movie Theaters").  The Defendant's parent company is AMC Entertainment, Inc. which is itself in turn a subsidiary of AMC Entertainment Holdings, Inc., which is a publically held NYSE company with majority shareholder being a Chinese international conglomerate.

24.     On information and belief, the Defendant operates all of the AMC Movie Theaters in Florida. The Defendant is authorized to conduct, and is conducting, business in Florida as a foreign profit corporation and within the jurisdiction of this court.

25.     The Defendant's chain of AMC Theaters operate on the multiplex model which has been expanded and revised as the megaplex model (which is designed to accommodate thousands of movie-viewing customers).   The standard multiplex houses 24 screens, but they range from 20 to 30 screens per multiplex theater location.  Each multiplex movie theater houses the 20 to 30 individual theaters (one screen each) which are joined by a single box office, lobby, and concession stand and restroom facilities. Each of the Defendant's AMC Theaters is open to the general public.

### FACTS

26.     Each of the Defendant's AMC Movie Theaters physical multiplex and megaplex movie theater locations and its website are places public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §§12182, §12181(7)(C); 28 C.F.R. Part 36.

27.     The Defendant owns, operates, and controls the www.amctheatres.com "website".  The website offers the general public the on-line experience[2] of: i) locating an AMC Movie Theater, ii) synopsis and reviews of movies, iii) lists show times by

---

[2] including but not limited to

location, iv) purchasing movie tickets and gift cards,  v) enrolling in the AMC Stubs program and vi) managing their AMC Stubs account(s) and to receive benefits thereon.

28.     The website is a place of public accommodation and has a nexus with the Defendant's places of public accommodation (42 U.S.C. §12181(7)(C)), as the website allows the general public access to movie show times, purchasing of tickets and gift cards, and managing frequent watcher accounts (AMC Stubs). As such, the website is a service, which is a public accommodation; 42 U.S.C. §12181(7)(E).

29.     Under the ADA, all places of public accommodation must ensure that disabled individuals enjoy full and equal enjoyment of goods and services by making reasonable modifications to its services. The internet has also become a doorway to the full range of activities, goods, and services that are available off1ine

30.     Public Accommodations that use the internet for communications and sales regarding their programs, goods or services, must offer those communications through adequate accessible means as well.

31.     The Defendant's website allows the general public (consumer) to (among other things) efficiently, privately, and conveniently view the various locations of Defendant's AMC Movie Theaters and to view the movies offered at Defendant's places of public accommodation, and to purchase tickets for movies offered at the and view frequent movie watcher accounts.

32.     Plaintiffs Beckman and Gomez utilize screen reader software (hereinafter referenced as "screen reader software") which allows individuals who are visually impaired to comprehend information available on the internet and access websites.

33.     During the month of February 2016, Plaintiff Beckman attempted to utilize the Defendant's website to become informed as to the movies which were playing and to purchase tickets to a movie.  However, the Defendant's website did not integrate with Plaintiff Beckman's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

34.     During the month of February 2016, Plaintiff Gomez attempted to utilize the Defendant's website to become informed as to the movies which were playing and to purchase tickets to a movie.  However, the Defendant's website did not integrate with Plaintiff Beckman's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means.

35.     The Defendant's website did\does not include a link for accessibility for the disabled.   Such links are generally available under an option with the universal disability symbol[3] which when clicked, would permit disabled individuals to access the website's accessibility information and accessibility facts.   The other option is for the universal disability symbol to be present on a website homepage with the statement "If you cannot access this information, please call (telephone ###) for assistance."  Neither of these features is present on the Defendant's website.

36.     Therefore, due to Plaintiffs' Beckman and Gomez's visual disabilities and the failure of the Defendant to insure its website was adequately accessible to individuals with visual impairments, the Plaintiffs were unable to comprehend the website to become



[3]

informed of the movies offered and to purchase tickets to the movie of their (respective) choice, as they had intended.

37.     Thus, the Defendant has discriminated against Plaintiffs Beckman and Gomez on the basis of their disabilities in the full and equal enjoyment of the services, facilities, privileges, advantages or accommodations through its place of public accommodation (its website) in violation of 42 U.S.C. § 12182(a) and 28 C.F.R. § 36.201 by failing to adequately program its website to accurately and sufficiently integrate with common commercially available screen reader software utilized by Plaintiffs Beckman, Gomez, and others with visual disabilities.

38.     As a result of the Defendants' discrimination, the Plaintiffs Beckman and Gomez were unable to use the website and each suffered an injury in fact including loss of dignity, mental anguish, and other tangible injuries.

39.     Plaintiffs Beckman and Gomez continue to desire to patronize the Defendant's AMC Movie Theaters through the utilization of the Defendant's website, but are unable to do so as they are each unable to comprehend the Defendant's website, thus they will continue to suffer irreparable injury from the Defendant's intentional acts, policies, and practices set forth herein unless enjoined by this Court.

40.     The Defendant's website did\does not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend Defendant's website in an effective manner.

41.     The Defendant's website is\was not designed and programmed to interface with commercially available screen reader software for disabled individuals who are visually impaired in the same manner as the website is offered to the general public.

42.     The Defendant's website is\was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired.

43.     On information and belief, the Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of its website by individuals with disabilities.

44.     On information and belief, the Defendant has not adopted a Web Accessibility Policy to insure full and equal use of its website by individuals with disabilities.

45.     On information and belief, the Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its website by individuals with disabilities.

46.     The Defendant's website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[4].

47.     Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages and accommodations provided by and through its website (www.amctheatres.com)

48.     On information and belief, the Defendant is aware of the access barriers within its website which prevent individuals with disabilities who are visually impaired from the means to comprehend the Defendant's website to become informed of the

---

[4] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined  how to make Web content more accessible to people with disabilities (W3C)

theater locations, movies offered, and to purchase tickets to the movies offered at the Defendant's places of public accommodation (AMC Movie Theaters).

49.    Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

50.    Thus, the Defendant has refused to make its website accessible to individuals with disabilities who are visually impaired.

51.    Enforcement of the Plaintiffs' rights is right and just pursuant to 28 U.S.C. §§2201, 2202.

## CLASS ACTION ALLEGATIONS

52.    Plaintiffs Beckman and Gomez bring this case as a class action pursuant to Federal Rule of Civil Procedure Rule 23, in that the class is so numerous that joinder of all members is impracticable, there are questions of law and fact common to the class [F.R.C.P. Rule 23(a)(1)], the claims and defenses of the representative party is typical of those of the class [F.R.C.P. Rule 23(a)(3)], and Plaintiffs Beckman and Gomez (as representative parties) will fairly and adequately protect the interests of the class [F.R.C.P Rule 23(a)(4)].

53.    The Defendant's website supports and supplements the Defendant's chain of AMC Movie Theaters.

54.    According to the National Federation for the Blind[5], there are 6,670,300 Americans with visual disabilities and 434,600 within the state of Florida.

55.    Thus, the Class of Others Similarly Situated to Plaintiffs Beckman and Gomez which is to be represented by Plaintiffs Beckman and Gomez is so numerous (434,600 visually impaired Americans in the state of Florida, 5,603,052 visually impaired

---

[5] Statistics for 2012, see http://www.NFB.org/blindness-statistics

Americans throughout the United States) that a joinder of each individual member is impracticable; F.R.C.P. Rule 23(a)(1).

56.     Plaintiffs Beckman and Gomez are representative of the Class due to the fact that they each suffer from a qualified disability in that they are both visually impaired and require screen reader software interface in order to comprehend and effectively communicate with public accommodations on the internet, such as the Defendant's website.

57.     The questions of law and fact relating to the representative Plaintiffs Beckman and Gomez are similar and common to the law and fact questions which would be raised by other members of the Class if they were individually named plaintiffs herein.

58.     Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the Class if they were a party to this action.

59.     Plaintiffs Beckman and Gomez seek injunctive relief for the implementation of the relief provide by the ADA which is the same relief which would be sought by each class member if he or she brought a claim individually.  Accordingly, Plaintiffs Beckman and Gomez (as representative parties for the Class) will fairly and adequately protect the interests of the Class.

60.     The relief sought herein is for the benefit of all members of the Class and consistent injunctive relief should be provided for each member of the Class.

61.     Prosecution of this matter by individual members of the Class would only create a risk of inconsistent and varying adjudications and the establishment of

incompatible standard by defendant and adjudication which may be dispositive of the interest of the other Class members.

62.    The questions of law and fact common to the members of the Class, such as the degree of non-compliance, which will be raised and adjudicated herein, predominate over any questions affecting only the individual Plaintiffs or individual members of the Class. As a result, this class action is the optimal method for reaching a fair and efficient adjudication of the controversy raised herein.

63.    The Defendant has discriminated against Plaintiffs Beckman and Gomez and the members of the Class by denying effective communication through its website.

64.    The Defendant has failed to provide any mechanism by which to adequately serve visually impaired individuals such as Plaintiffs Beckman and Gomez and others similarly situated. The Defendant is operating in violation of Plaintiffs' rights as protected by the ADA and is entitled to injunctive relief. 42 U.S.C. §12188.

65.    Plaintiffs Beckman and Gomez and others similarly situated have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein and this suit for declaratory judgment and injunctive relief is their only means to secure adequate redress from the Defendant's unlawful and discriminatory practices.

66.    Plaintiffs Beckman and Gomez and others similarly situated will continue to suffer irreparable injury from Defendant's intentional acts, policies, and practices set forth herein unless enjoined by the court.

67.    Notice to the Defendants is not required as a result of the Defendant's failure to cure the violations.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

68.     Plaintiffs Beckman and Gomez and others similarly situated re-allege and incorporate by reference the allegations set forth in ¶¶s 1 – 6 above

69.     The Americans with Disabilities Act ("ADA") is landmark civil rights legislation that is the result of decades of advocacy to improve the lives and role in society of all persons with disabilities.  The ADA was enacted and effective as of July 26, 1990.  The ADA legislation has been protecting disabled persons from discrimination due to disabilities for 26 years[6].

70.     Congress passed the ADA, 42 U.S.C. § 12101 et seq., in 1990. The statute is a comprehensive, broad-reaching mandate to eliminate discrimination on the basis of disability in all areas of American civic and economic life. "After thoroughly investigating the problem, Congress concluded that there was a compelling need for a clear and comprehensive national mandate to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." PGA Tour v. Martin, 532 U.S. at 675 (2001) (internal quotation marks omitted).

71.     "Congress enacted the ADA in 1990 to remedy widespread discrimination against disabled individuals." PGA Tour, 532 U.S. 661, 674 (2001).

72.     The Department of Justice has long taken the position that both State and local government websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities

---

[6] "Equal treatment is a fundamental purpose of the ADA. People with disabilities must not be treated in a different or inferior manner...."  U.S. Department of Justice Civil Rights Division Disability Rights Section **ADA Update** June 2015

covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities[7].

73.     As a result of the inaccessibility of the Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), the Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that the Defendant has made available to the general public in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

74.     Pursuant to 42 U.S.C. §12181(7)(C), the Defendant's website is a *place of public accommodation* under the ADA because it serves to augment its chain of AMC Movie Theaters by providing the general public information on the various locations of Defendant American Multi-Cinema, Inc.'s chain movie theaters ("AMC Movie Theaters"),  synopsis and reviews of movies offered and upcoming, movie show times, special promotions, ticket prices and the ability to purchase movie tickets as well as to purchase gift cards online.

75.     Pursuant to 42 U.S.C. §12181(7)(E), the Defendant's website is a *place of public accommodation* under the ADA because it serves to augment its chain of AMC Movie Theaters by providing the general public the means to enroll in the Defendant's frequent movie watcher program ("AMC Stubs"), and to manage the AMC Stubs frequent watcher account(s) and to receive benefits as a frequent movie watcher thereon.

76.     As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA.  Plaintiffs

---

[7] See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

Beckman and Gomez each have suffered an injury in fact because of the Defendant's non-compliance with the ADA.

77.     A sampling review of just part of the Defendant's website revealed that the website is not functional for users who are visually impaired, as follows:

| ID | Scenario | Issue/Description | Severity | Assistive Technology | WCAG 2 Guideline |
|----|----------|-------------------|----------|----------------------|------------------|
| WEB_001 | Ad-Hoc Exploration | The seat selection tool is not programmatically available.  A user of a screen reader is not able to determine how many seats are available or to select a specific seat for the movie. | Blocking | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
| WEB_002 | Ad-Hoc Exploration | Closed Captions are not available for the trailer preview. A user who is deaf or hard of hearing will not be able to assess whether a movie is worth visiting. | Blocking | N/A | 1.2 Time-based Media: Provide alternatives for time-based media. |
| WEB_003 | Find Movie | On the home page, the iframe for the Facebook connection does not have a title attribute. A user of a screen reader will not know what will happen when interacting with the iframe. | Major | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
| WEB_004 | Find Movie | Date Picker to select date for movie cannot be controlled when screen reader is running. This means a user who relies on a screen reader will need assistance to select a movie other than the default value of today's date. | Blocking | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
| WEB_005 | Find Movie | "Change Location" button does not move screen reader's focus to newly displayed modal dialog.  This causes the user to become lost on page, and frequently miss out on finding the newly displayed content. | Major | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |

| ID | Scenario | Issue/Description | Severity | Assistive Technology | WCAG 2 Guideline |
|---|---|---|---|---|---|
| WEB_006 | Find Movie | Various icons to describe supported attributes of a movie are not announced by screen readers.  For example, a user will not know whether a movie supports captions or audio descriptions. | Blocking | Screenreaders | 1.1 Text Alternatives: Provide text alternatives for any non-text content so that it can be changed into other forms people need, such as large print, braille, speech, symbols or simpler language. |
| WEB_007 | Find Movie | Movie Rating is not announced by screen reader.  A user will not be able to discover on the ticket selection page what the rating of a particular movie is. | Blocking | Screenreaders | 1.1 Text Alternatives: Provide text alternatives for any non-text content so that it can be changed into other forms people need, such as large print, braille, speech, symbols or simpler language. |
| WEB_008 | Purchase Tickets and Manage Cart | Blue and white color combination does not meet minimum color contrast requirements.  A person who is low-vision may have trouble distinguishing elements with low contrast. | Major | N/A | 1.4 Distinguishable: Make it easier for users to see and hear content including separating foreground from background. |
| WEB_009 | Purchase Tickets and Manage Cart | When a user selects the "Remove" link to take a movie out of the shopping cart, there is no notification that the action was successfully completed. | Major | SCreenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
| WEB_010 | Purchase Tickets and Manage Cart | The labels for the types of tickets being purchased are not programmatically associated. This makes it more difficult for a user of a screen reader to determine if an Adult, Child, or Senior ticket is being purchased. | Blocking | Screenreaders | 3.3 Input Assistance: Help users avoid and correct mistakes. |
| WEB_011 | Purchase Tickets and Manage Cart | When tickets are successfully added to a user's cart, there is no announcement to the screen reader. | Major | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
| WEB_012 | Purchase Tickets and Manage Cart | The "Cart" and "My Account" links are not in a logical focus order.  A user that relies on the keyboard to logically navigate the page will be confused and may take longer to complete a transaction. | Major | Keyboard | 2.4 Navigable: Provide ways to help users navigate, find content, and determine where they are. |

| WEB_013 | Ad-Hoc Exploration | The user's "Account" link does not expose that it has a dropdown associated with it. | Blocking | Screenreaders | 4.1 Compatible: Maximize compatibility with current and future user agents, including assistive technologies. |
|---------|---------|---------|---------|---------|---------|
| WEB_014 | Ad-Hoc Exploration | The options that are available in the dropdown menu from the "Account" link are not available from the keyboard. | Blocking | Keyboard | 2.1 Keyboard Accessible: Make all functionality available from a keyboard. |

78.     More violations are present on other pages of the website, and they will be determined and proven through the discovery process

79.     The Defendant has violated the ADA (and continues to violate the ADA) by denying access to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations are ongoing.

80.     As a result of the Defendant's inadequate development and administration of its website, Plaintiffs Beckman and Gomez and others similarly situated are entitled to injunctive relief pursuant to 42 U.S.C. §12133 to remedy the discrimination.

## INJUNCTIVE RELIEF

81.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiffs Beckman and Gomez and others similarly situated injunctive relief; including an order to:

    a) Require American Multi-Cinema, Inc. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of www.amctheatres.com a statement as to Defendant American Multi-Cinema, Inc.'s policy to ensure persons with disabilities

18

have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website, and

b) Requiring that Defendant American Multi-Cinema, Inc. cease and desist discriminatory practices and if necessary to cease and desist operations its website and until the requisite modifications are made such that its website becomes equally accessible to persons with disabilities.

## **ATTORNEYS' FEES AND COSTS**

83.     Plaintiffs Beckman and Andres Gomez have been obligated to retain the undersigned counsel for the filing and prosecution of this action.  The Plaintiff and others similarly situated are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant American Multi-Cinema, Inc.

WHEREFORE, Plaintiffs Walter Joseph Beckman and Andres Gomez on their own behalf and on behalf of all other Individuals Others Similarly Situated hereby demand judgment against Defendant American Multi-Cinema, Inc. and request the following injunctive and declaratory relief:

A.     The Court issue a declaratory judgment that Defendant American Multi-Cinema, Inc. has violated the Plaintiffs' rights as guaranteed by the ADA;

B.     The Court enter an Order granting temporary, preliminary and permanent injunction prohibiting Defendant American Multi-Cinema, Inc. from operating its website without adequate accommodation for the visually impaired community;

C.     The Court enter an Order requiring Defendant American Multi-Cinema, Inc. to update its website www.milamsmarkets.com to remove barriers in

order that individuals with visual disabilities can access the website to the full extent required by the Title III of the ADA.

D.      The Court enter an Order requiring Defendant American Multi-Cinema, Inc. to clearly display the universal disabled logo[8] within its website, wherein the logo would lead to a page which would state American Multi-Cinema, Inc.'s accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the website;

E.      The Court enter an order requiring Defendant American Multi-Cinema, Inc. to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

F.      The Court enter an Order directing Defendant American Multi-Cinema, Inc. to evaluate and neutralize its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant American Multi-Cinema, Inc. to undertake and complete corrective procedures to its website.

---

[8] 

G.      The Court award reasonable attorney's fees, compensatory damages, all

costs (including, but not limited to court costs and any expert fees), and

other expenses of suit, to the Plaintiffs; and

H.      That the Court award such other and further relief as it deems necessary,

just and proper.

Dated this 10th day of March, 2016.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*